UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMAR GUEYE,

    Plaintiff,

vs.

PAGE TOWER, *et al*.

    Defendants.

Case No. 1:09-cv-385

Dlott, J
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff, Amar Gueye, who is proceeding *pro se,* filed suit on May 28, 2009. The only claims that remain are those alleging discrimination and retaliation under the United States Fair Housing Act, 42 U.S.C. § 3601 *et seq.,*. Chief Judge Dlott dismissed the other named defendants and the remaining claims asserted by Plaintiff by Order dated June 11, 2009. (See Doc. 4).

Pursuant to local practice, Defendants' Motion for Summary Judgment and Supporting Memorandum (Doc. 25) have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. 28 U.S.C. §636(b). For the reasons stated herein, I recommend that Defendants' motion be granted, and that Plaintiff's claims be dismissed with prejudice.

**I. Relevant Factual Background**

Plaintiff is bringing an action against Defendants, Page Tower and Wilburt Byrd. Page Tower is a United States Department of Housing and Urban Development ("HUD") Assisted § 236, LMSA Section 8 subsidized property. Byrd is the Site Manager for

Page Tower Apartment. (Doc. 3).

Plaintiff submitted an application for admission to Page Tower on June 17, 2008. (Doc. 25-1 at pp. 1-8). Per Page Tower's policy, a home visit is to be conducted on every prospective tenant prior to presenting them with a lease. According to Byrd, he had difficulty arranging a visit to Plaintiff's home. (*Id.* at 11). Plaintiff wrote Byrd a letter explaining that the difficulty was because his current residence was only temporary and he would have to get permission for the visit. (*Id.* at 13).

In addition to the issue of temporary residence, Plaintiff also questioned the purpose of the visit. (*Id.* at 13). In a letter to Plaintiff, dated September 18, 2008, Byrd explained the purpose of the visit was to inspect how a prospective tenant is currently living. (*Id.* at 14). At Plaintiff's concession, the visit was finally completed on September 30, 2008. (*Id.* at 11). On October 10, 2008, Plaintiff was told that there were currently no vacancies at Page Tower but, as soon as an apartment became available he would be notified. (*Id.* at 11). On October 28, 2008, Plaintiff filed a housing discrimination complaint against Defendants with HUD. (*Id.* at pp. 9-10). Plaintiff's complaint was based on his belief that Defendants were intentionally delaying the procurement of an apartment for discriminatory reasons. (*Id.*). On November 7, 2008, an apartment became available and Byrd told Plaintiff that he could move in on November 10, 2008. (*Id.* at 12).

On November 10, 2008, Plaintiff told Byrd that he could not move in until November 12, 2008, because he did not have enough money to pay the rent. (*Id.* at 12). Plaintiff subsequently signed a lease on November 12, 2008. (*Id.* at pp. 15-58). According to terms of the lease, based on Plaintiff's income status at the time, his rent

was to be $25.00 per month. (Doc. 25-1 at 71). Because Plaintiff did not move into the apartment until November 12th, Defendants pro-rated Plaintiff's rent to $16.00 for the month of November. However, Plaintiff paid $25.00 and as a result, received a credit of $9.00 on his account. (Doc. 25-1 at 71). Plaintiff stated that because an apartment was made available to him, he dismissed his housing discrimination complaint he filed with HUD. (Doc. 3 at 3).

Plaintiff also alleges that Defendants used a HUD addendum as grounds to evict him. (Doc. 3 at 4). Defendants required their tenants to comply with the HUD Lease Addendum Violence Against Women and Justice Department Reauthorization Act of 2005 ("VAWA"). (Doc. 25-1 at 66). Plaintiff was notified of this requirement in September 2008. However, at first, Plaintiff chose not to comply with VAWA and questioned why such a requirement was being imposed. (Doc. 3 at 4). Byrd informed Plaintiff that this was not a requirement imposed on Plaintiff by Defendants, but rather, as an "assisted property" Defendants were required by the federal government to have the form completed by all of their tenants, not just Plaintiff. (Doc. 25-1 at pp. 65-66).

In March 2009, Plaintiff alleges to have filed another complaint with HUD claiming Defendants retaliated against him for failing to sign the VAWA. (Doc. 3 at 3). However, there is no documentation to support this claim other than Plaintiff's assertion that his complaint was referred to the Ohio Civil Rights Commission ("OCRC") and a copy of a letter he wrote in April complaining about his recertification process and alleged unauthorized entries into his apartment.

As a result of Plaintiff's failure to sign the VAWA, Defendants gave Plaintiff Notice to Leave the Premises on April 29, 2009, for failure to conform to the lease.

3

(Doc. 3-1 at 3). It appears from Defendants' brief that Plaintiff eventually signed the VAWA and Defendants abandoned this Notice to Leave the Premises. (See Doc. 25 at 5).[1]

However, on May 6, 2009, Defendants again provided Plaintiff with a Notice to Leave the Premises. This time for failure to timely pay rent. (Doc. 25-1 at 70). On April 3, 2009, Plaintiff submitted a check for $16.00 for partial payment of his rent. This check was returned to him with a letter explaining that partial rent was not accepted. (*Id.* at 71). The letter also stated that, according to Plaintiff's recertification his rent was increased to $234.00 per month based on income verifications provided by Plaintiff's employer. (*Id.*). However, despite the language of the letter, it appears to the Court that the rent due for April was $25 and that the $9 credit on Plaintiff's account from November was combined with the $16.00 partial payment to make April's rent paid in full.[2]

On May 9, 2009, Plaintiff attempted to submit a $25.00 payment for rent to Defendants. Defendants rejected the check because it did not include the late charge and because eviction proceedings were already initiated in State Court.[3] (*Id.* at pp. 72-73). Also, it appears from the State Court docket that on June 3, 2009, Plaintiff paid $50.00 to the Court for May and June rent but did not include the May late charges. (See entry of 6/3/09 and Notice of Appeal filed on 6/8/09). A writ of restitution was later

---

[1] It is unclear from Plaintiff's briefings if he did eventually sign the VAWA; however, it is clear from the record that Defendants did, for whatever reason, abandon the April 29, 2009 Notice to Leave the Premises.
[2] Defendants do not state that the credit was applied to April's rent, however, based upon the state court records reviewed by this Court and the documents presented here, this is the Court's conclusion.
[3] Defendant alleges that this transpired on May 22. Regardless if it was May 9 or May 22 the late fee became applicable as of May 6, 2009.

4

granted in Hamilton County Municipal Court on July 20, 2009. (*Id.* at 74). On June 11, 2009, Plaintiff filed this federal lawsuit.

## II. Analysis

### A. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts…in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. V. Rising,* 477 F. 3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). "Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough.' *Mitchell v. Toledo Hosp.,* 964 F. 2d 577, 582 (6th Cir. 1992) (citing *Gregg v.*

5

*Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986)). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Here, Plaintiff's response memorandum failed to comply with the Federal Rules of Civil Procedure as it did not set forth any specific facts showing that there is a genuine trial issue. Rather, Plaintiff's response merely restated what was said in the original complaint and was filed ninety days late. As a result, of the late filing, Plaintiff's memorandum was stricken by this Court.

Where the non-moving party fails to respond to the motion or arguments within the motion, the court is still required to consider all the materials properly before it in order to determine if a genuine issue of material fact exists. *Sanabria v. Germain Motor Co.,* 2005 WL 2313950, Case No. C2:04-CV-508 (S.D. Ohio, Sept. 21, 2005). Thus, although the non-moving party is required to set forth more than a scintilla of evidence supporting the essential elements of his claims, if he fails to respond, or in this case, fails to timely respond resulting in his response being stricken, the court still must review the record to discern whether there is any evidence to support Plaintiff's claims. *Taylor v. Unumprovident Corp.,* 2005 WL 3448052, Case No., 1:03CV1009 (E.D. Tenn., Dec. 14, 2005). That review need not be a scouring of the record, but the court cannot simply dismiss the non-moving party's claims because no responses were filed. If, after a fair review of the record by the court, the court does not find any such evidence, then the non-moving party will be deemed to have not put forth sufficient evidence to support his claims. *Id.*

**B. Discrimination**

In this case, even if the Court considered Plaintiff's response to the Motion for Summary Judgment and Supplemental Response that this Court struck from the record (See Docs. 27, 29 and 34), Plaintiff has failed to present anything more than his own conclusory allegations in support of his claims. Because Plaintiff's allegations are flatly contradicted by the records maintained and filed by Defendants, his allegations, standing alone, are insufficient to demonstrate a genuine issue for trial. And although Plaintiff has attached to his complaint and response memorandum some additional records, such as copies of administrative grievances, returned money orders and plane tickets, none of those records remotely call into doubt the accuracy of the records maintained and provided by the Defendants.

First, Plaintiff alleges that he was discriminated against when he was denied an apartment in a timely manner in violation of 42 U.S.C. §3604(a) which makes it "unlawful to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of… a dwelling to any person because of race, color, religion, sex, familial status, or national origin."[4] In order to be successful on a discrimination claim, Plaintiff must present evidence of discrimination, either by way of direct evidence or indirect evidence. If there is no direct evidence, like here, the Plaintiff must establish a *prima facie* case of housing discrimination based on the *McDonnell Douglas* burden shifting scheme. *Lindsay v. Yates*, 578 F.3d 407, 415 (6th Cir. 2009) *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the plaintiff is successful, the burden shifts to the defendant to offer evidence of a legitimate,

---

[4] Although Plaintiff does not allege a violation of the Civil Rights Act (42 U.S.C. §§1981, 1982), if he had, the analysis would be governed by the same legal framework. *Lindsay v. Yates*, 578 F.3d 407, 415 (6th Cir. 2009).

7

nondiscriminatory reason for the adverse housing decision. If the defendant carries his burden, the burden shifts back to the plaintiff to identify evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for unlawful discrimination. *Id.* (internal citations omitted). See also, *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007); *Mencer v. Princeton Sq. Apartments*, 228 F.3d 631, 634 (6th Cir. 2000).

To show a *prima facie* case of housing discrimination the Plaintiff must show that he (1) is a member of a racial minority; (2) applied for and was qualified to purchase or rent certain property or housing; (3) was rejected; and (4) the housing remained available thereafter. *Lindsay v. Yates*, 578 F.3d at 415 *citing Mencer*, 228 F.3d at 634-635. Here, Plaintiff has presented no evidence that he was rejected as a tenant and, in fact, cannot present such evidence since he moved into an apartment. Thus, Plaintiff cannot establish a *prime facie* case of housing discrimination.

Even if this Court found that Plaintiff could somehow establish a *prima facie* case, the Defendants have set forth a nondiscriminatory reason for the delay in Plaintiff obtaining an apartment and there is no evidence that such reason was pretext for discrimination. Defendants properly set forth that the delay in offering an apartment to Plaintiff was that a home study needed to be completed. Plaintiff himself caused this delay by initially not allowing the home study to be conducted. Once the home study was completed an apartment was offered to Plaintiff in fairly short order.

**C. Retaliation**

Plaintiff next alleges that because he filed a second complaint with HUD in March 2009 that Defendants retaliated against him and threatened his life in violation of 42

8

U.S.C. § 3617.[5][6] Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" his or her rights under the Fair Housing Act. *Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994). The same *McDonnell Douglas* burden shifting analysis employed above has been adapted in this context as well. *Campbell v. Robb*, 162 Fex. Appx. 460 *citing Mercer v. Princeton Square Apartments*, 228 F. 3d at 634. To prevail on a Section 3617 claim, the plaintiff must establish a *prima facie* case of discrimination. If a *prima facie* showing is made, the defendant must then offer a legitimate nondiscriminatory reason for its conduct. And then the burden shifts back to the plaintiff to show that the proffered reason is a pretext for the unlawful discrimination. *Campbell v. Robb*, 162 Fed. Appx. 460, 473 (6th Cir. 2006) *citing Mercer v. Princeton Square Apartments*, 228 F. 3d at 634. It is not a mistake that the retaliation test under the Fair Housing Act is the same as the test to prove a discrimination claim. The Sixth Circuit is clear that it requires "a §3617 plaintiff to demonstrate that the defendant 'exercised their powers with a discriminatory animus' in order to survive summary judgment." *Id.* at 474 (The district court correctly concluded that to survive summary judgment on her retaliation claim, the plaintiff was required to put forth some evidence of discriminatory effect or intent on the defendant's part.). Accord *Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994).[7]

---

[5] Defendants interpret Plaintiff's Complaint to bring a claim of retaliation due to Plaintiff's filing of his October 2008 Complaint with HUD. However, this Court reads Plaintiff's Complaint to allege retaliation for his March 2009 Complaint to HUD. Regardless of which Complaint Plaintiff alleges is the underlying act, the legal analysis and outcome are the same.

[6] Plaintiff also raises 42 U.S.C. §3616. However, that section relates to cooperation with state and local agencies administering fair housing laws and is not applicable to any of the facts in this matter. Thus, it will not be addressed.

[7] Campbell argued that she should only be required to present proof that Robb was motivated by her exercise of her fair housing rights—filing the lawsuit and a HUD complaint—but the Sixth Circuit

As previously stated, there are no facts to substantiate the allegation that Defendants acted with discriminatory intent. What is clear from the record is that Plaintiff failed to timely pay his rent for the month of May and that when he did attempt to pay his rent he did not include the late fee that was then due and owing. Plaintiff has presented no facts to support his claim of retaliation other than mere proximity in time in that he filed his HUD complaint in March and eviction proceedings were instituted in May. However, without more, that is not enough to establish a *prima face* case of retaliation under §3617.

### D. Issue Preclusion

*Barnes v. McDowell,* 848 F.2d 725, 738 (6th Cir. 1998), *cert denied,* 488 U.S. 1007 (1989), teaches that federal courts must give a state court judgment the same preclusive effect that the judgment would be given by the state in which it was rendered. In Ohio, "issue preclusion, or collateral estoppel, precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *State ex rel. Nickoli v. Metroparks,* 124 Ohio St. 3d 449, 453 (Ohio 2010)(internal citations omitted). Here, the Ohio court found that Plaintiff violated the terms of his lease by failing to timely pay his rent, thus, he is precluded from re-litigating in federal court whether he was evicted for retaliatory reasons. See *Morris v. Dehaan*, 944 F.2d 905, 1991 U.S. App. LEXIS 22135 (6th Cir. 1991).

### E. Plaintiff's Litigation History

In the past five years, Plaintiff has filed 8 cases in this district, all but one were

---

disagreed. *Campbell v. Robb*, 162 Fed. Appx. at 473.

10

filed *in forma pauperis*. Of those 7 filed *in forma pauperis*, five were dismissed at the initial screening stage, pursuant to 28 U.S.C. §1915(e)(2)(b)[8], this case was partially dismissed at the initial screening stage (see Doc. 4), and the other case[9] was dismissed, after it was transferred to the Eastern District of Kentucky, as a sanction under Rule 37 for discovery abuses. After reviewing the procedural history of the cases filed, *in forma pauperis*, by this Plaintiff, the Court recommends that Plaintiff be formally warned that if he continues to file frivolous litigation in this Court that he may be deemed a vexatious litigator and could be subject to pre-filing restrictions before any additional lawsuits can be filed in this Court. *See Johnson v. Univ. Hous.*, 2007 U.S. Dist. LEXIS 90653, 36-38 (S.D. Ohio 2007). "These restrictions could include, but are not limited to, requiring Plaintiff to file a bond to cover the opposing party's attorney's fees, *see, e.g., Stewart v. Fleet Financial*, 229 F.3d 1154 (6th Cir. Aug. 10, 2000)(requiring harassing and vexatious litigator to file $25,000 bond prior to filing suit is not an abuse of discretion); ... or mandating that Plaintiff first seek leave of court prior to filing a lawsuit, *see, e.g., Marbly v. Wheatley*, 87 Fed.Appx. 535 (6th Cir. Feb. 4, 2004)(unpublished)." *Johnson v. Univ. Hous.,* 2007 U.S. Dist. LEXIS 90653, 36-38 (S.D. Ohio 2007).

### III. Conclusion and Recommendation

In short, the Court has construed all relevant facts in the light most favorable to the Plaintiff but finds no material facts to be in dispute. Defendants' arguments on these

---

[8] Those cases are: 1:06cv39, 1:07cv1033, 1:08cv334, 1:08cv618, and 1:09cv730. The Court notes that 1:08cv334 was reversed in part on appeal. However, on remand the matter was dismissed pursuant to Fed. R. Civ. P. 12(b)(6).
[9] 1:08cv246. Once transferred to the EDKY is was given case number 2:08cv66.

issues are well-supported; therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's discrimination and retaliation claims.

For the reasons stated herein. **IT IS RECOMMENDED** that**:**

1. Defendants' Motion for Summary Judgment (Doc. 25) be **GRANTED**

2. This case be TERMINATED from the active docket of this Court.

3. The Court should certify pursuant to 28 U.S.C. §1915(a)(3) that an appeal of its Order dismissing this action is not taken in good faith and that Plaintiff be denied leave to apply to proceed *in forma pauperis.* Plaintiff would remain free to apply to proceed *in forma pauperis* in the Court of Appeals. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

4. Plaintiff be warned that the filing of additional frivolous lawsuits could lead to a determination that he is a vexatious litigator and be subject to pre-filing restrictions.

    s/Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

AMAR GUEYE,

    Plaintiff,

v.s

PAGE TOWER, *et al*.

    Defendants.

Case No. 1:09cv385

Dlott, J
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).